## Charles E. Barritt, Appellee, v. A. W. Steidinger, Appellant.

### Gen. No. 6,126.

1. CONTRACTS, § 187*—*when construction of parties adopted by court.* If a contract is ambiguous the construction which the parties have placed upon it by their conduct will be adopted by the courts, if such construction is reasonable, and in such case evidence as to the construction by the parties is admissible.

2. BROKERS, § 84*—*when evidence of compromise admissible.* In an action to recover compensation for the negotiation of the sale of realty, a letter containing an admission that the deal shall be put through as arranged if plaintiff refuses his claim for compensation is admissible in evidence.

3. APPEAL AND ERROR, § 788*—*when matter not contained in record not considered.* A bill of particulars and an affidavit of merits not contained in the bill of exceptions are not before the court for consideration on appeal.

Appeal from the Circuit Court of Iroquois county; the Hon. FRANK L. HOOPER, Judge, presiding. Heard in this court at the April term, 1915. Affirmed. Opinion filed October 20, 1915.

ROBERT HENNING, O. F. MORGAN and F. M. CRANGLE, for appellant.

PALLISSARD & BENJAMIN and SAUM & MALO, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Charles E. Barritt was a real estate agent at Watseka. A. W. Steidinger lived at Forrest in Livingston county and owned a farm in Iroquois county which he wished to sell. He entered into a written contract, authorizing Barritt to sell it on terms therein stated, Barritt to have all he could get over a certain price as his compensation for selling it. Barritt procured A. Buchholz and George Worthington to buy it and signed a contract with them. Steidinger refused to convey. Barritt brought this suit to recover his agreed compensation, and filed a declaration containing a special

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

count on the contract, and the common counts. Defendant pleaded the general issue, there was a jury trial, and Barritt had a verdict and a judgment for $1,100, from which Steidinger appeals. Appellant claims that the contract had a plain and unambiguous meaning; that that meaning was not what was alleged in the special count and therefore appellee could not recover; that the court erred in admitting oral and documentary evidence showing how the parties themselves construed the contract; and that there are other minor errors in the record. Appellee contends that the contract has the meaning which he gave it in his declaration; that, if not, it is ambiguous and evidence was competent to show the construction which the parties themselves placed upon it; that the parties construed it as he declared upon it in the declaration; that, as so construed, he obtained the price called for by the contract and was entitled to recover.

The date of the contract was November 22, 1913, and the body of it was as follows:

"I, the undersigned, hereby authorize C. E. Barritt, of Watseka, Illinois, to sell the following described real estate, situated in Iroquois County, Illinois.

"The west half of the N. W. ¼ Sec. 34, T. 27, R. 12 W. containing eighty acres more or less, for the sum of Eight Thousand Dollars upon the following terms: ~~One hundred dollars~~ Dollars when the sale is made. ~~Balance March 1st, 1914.~~  $8,000.00 Dec. 1st, 1913, subject to incumbrance of $5,000.00 and interest from Dec. 1st, 1913.

"In consideration of C. E. Barritt using his best efforts to sell said premises and the payment of One Dollar receipt of which is hereby acknowledged. He is to have the exclusive sale of the above described premises until January 1st, 1914. And that he is to have everything and all above $8,000.00 Dollars, that he may sell the above described real estate for, as his commissions for selling the same. And I hereby agree to

furnish an abstract to said premises showing a merchantable title. And make the consideration in the deed any amount he may designate."

The proof shows that the words "One hundred dollars" and "Balance March 1st, 1914" were typewritten in the contract when it was prepared for signature, but were stricken out by appellant's direction and the line and a half written in its place. The construction contended for by appellee is that he was to sell the farm for $8,000; that $5,000 of that was to be paid by assuming an incumbrance for that amount upon the farm, (with interest from December 1, 1913, and that the balance of $3,000 was to be paid in cash on the same date. The purchasers agreed to pay $3,000 on or before December 1, 1913, and to assume the mortgage of $5,000 and to deliver three stallions. They did deposit $3,000 in the First National Bank of Watseka to await the delivery of an abstract showing merchantable title, and they delivered the three horses to Barrit, which horses on appellee's theory of the construction of the contract, would be his commissions. Either the contract means that the land was to be sold for $8,000 as indicated in the first and last parts of the contract, or, if the language therein, "$8,000 Dec. 1st, 1913, subject to incumbrance of $5,000.00 and interest from Dec. 1st, 1913," standing by itself would be construed to mean a sale for $13,000, then the contract is ambiguous, and uncertain as to the selling price. We can hardly say that it clearly means a sale for $13,000 when, as we shall see hereafter, the parties themselves construed it to mean $8,000. If a selling price of $8,000 for the farm is the true construction, appellee's declaration and proofs entitled him to recover. If the contract is ambiguous, then it is a familiar rule that the construction which the parties have placed upon it by their conduct will be adopted by the courts in the event of litigation concerning it, if that construction is reasonable. *People v. Murphy,* 119 Ill. 159; *Burgess*

*v. Badger,* 124 Ill. 288; *Carroll v. Drury,* 170 Ill. 571; *W. H. Purcell Co. v. Sage,* 200 Ill. 342; *Consolidated Coal Co. of St. Louis v. Jones & Adams Co.,* 232 Ill. 326; *McLean County Coal Co. v. City of Bloomington,* 234 Ill. 90; *D. M. Goodwillie Co. v. Commonwealth Elec. Co.,* 241 Ill. 42. The court therefore properly admitted evidence showing how the parties understood the contract.

The proof shows that upon making the sale appellee twice called appellant by telephone and told him the terms upon which he had sold it, and for him to deliver his abstract to the First National Bank of Watseka for examination, and that the parties were ready to deposit the $3,000 there which he was to receive, and to assume the incumbrance, and to deliver the three horses, and that appellant expressed himself satisfied. These conversations are not denied by appellant or by any one. Appellee then wrote two letters to appellant in which he told him what had been done and to turn the abstract over for examination. Under date of December 18, 1913, appellant wrote appellee a letter in which he expressed willingness to sell the property on the terms specified, except that he would only give appellee a commission of two per cent.; or he was willing that appellee should have $500 or $600 for his work, and the deal should be put through. Appellant contends here that this letter was an offer to compromise and therefore it was error to admit it in evidence. The general rule is as contended for by appellant, but the letter contains an admission that the deal shall be put through as arranged, if appellee would reduce his claim for compensation, and for that reason we are of opinion it was competent. But, if it was incompetent it did appellant no harm, because of other correspondence in evidence. A man by the name of Horneman, connected with the Watseka Creamery, bought a farm adjoining this farm of appellant's. On November 27, 1913, appellant wrote him that he had heard that he had bought this other

farm and had paid $200 per acre for it and would like to sell him appellant's farm. Under date of November 9, 1913, Horneman wrote appellant that he paid considerably less than $200 per acre for his farm and asked appellant what the price of his eighty was. To this appellant replied that he had offered his eighty for $100, but his wife would not sign the papers and so that they had made up their minds not to sell it for less than $150 per acre. Appellant contends that this correspondence was incompetent, but it contains an admission over the signature of appellant that he offered his eightly acres for $100 per acre, and that the deal fell through because his wife would not sign the deed. Appellant's counsel contend that this might have referred to a different eighty acres, but the proof disclosed that the farm bought by Horneman was adjoining the eighty of appellant in question and appellant did not testify to contradict that evidence. Thereafter, under date of January 4, 1914, appellant again wrote appellee that he had talked the matter over with his wife and she would not sign unless he would accept $2 per acre as commission; that he had really given this farm to his wife and they were willing to take what he sold the farm for and give appellee $2 per acre for selling it. Nowhere, in correspondence or conversation, did appellant claim that the farm should have been sold for $13,000 or that he should have $8,000 besides the mortgage. That theory has been invented since this suit was begun and rests exclusively upon the language of the contract, and is not sustained by any evidence offered by appellant. It is clear from all the evidence that both parties construed the contract to mean a sale of the farm for $8,000 and the receipt of the $3,000 by appellant and an assumption of the mortgage by the purchaser, but when appellant learned the value of the three horses which the purchasers agreed to give over the $8,000, the wife refused to sign and appellant re-

fused to convey. The evidence was competent and it is all one way, and supports the special count of the declaration and entitled appellee to recover.

The proof as to the value of the horses ranged from $1,250 to $1,500. One witness said that one of the horses was lame and he refused to put a price on that one. On that account, probably, the jury found only $1,100. It seems that after this deal fell through, appellee became the owner of the horses by some other deal between himeslf and Buchholz and Worthington, and appellant introduced a letter in which appellee offered to sell the horses for $1,200. That transaction, after appellant had refused to perform his contract, has no bearing on this case, except as it tends to show what value appellee placed upon the horses.

There was a bill of particulars filed with the declaration and an affidavit of merits by appellant concerning his version of the transaction, and appellant seeks to make some use thereof in argument here. We do not see that these papers change the situation; but neither of these documents is in the bill of exceptions, and therefore they are not before this court for consideration. *Eggleston v. Buck,* 24 Ill. 262; *Star Brewery v. Farnsworth,* 172 Ill. 247; *Dumbeck v. Walsh,* 179 Ill. App. 239. In *George H. Hess Co. v. Dawson,* 149 Ill. 138, there is a suggestion that if the bill of particulars was filed with the declaration, it might be treated as a part of the record, but that position was abandoned in *Boyles v. Chytraus,* 175 Ill. 370, where it was said: "The copy of the instrument sued upon, or the bill of particulars, indorsed on the declaration, being no part thereof, is no part of the record; and a bill of exceptions can alone inform us of what it is."

The ruling of the court upon the instructions was in harmony with the views above expressed and is approved. If any instruction appeared to authorize the jury to construe the contract, an instruction requested by appellant also submitted the construction of the

contract to the jury, and appellant cannot complain thereof. The jury did construe the contract correctly. The judgment is affirmed.

*Affirmed.*